[Civ. No. 24955.   Second Dist., Div. Three.   Aug. 7, 1961.]

FALLON AND COMPANY (a Corporation), Respondent, v. UNITED STATES OVERSEAS AIRLINES, INC. (a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

Crooks and Gunter and John E. Crooks for Appellant.

Axelrad & Sevilla and Stanley Sevilla for Respondent.

VALLÉE, J.—Appeal from an order denying a motion to set aside a default, the entry of default, and the judgment entered pursuant thereto.

The complaint was filed August 20, 1959. Summons and complaint were served on a vice-president of defendant on September 29, 1959, in Oakland, California. Defendant having failed to appear in the action, the clerk on November 3, 1959, at the request of counsel for plaintiff, entered the default of defendant. The judgment appealed from is not in the clerk's transcript. Inasmuch as the parties agree that a judgment was entered, we have augmented the record to include the superior court file. (Rule 12, Rules on Appeal.) Judgment was entered by the clerk on November 18, 1959.

On April 26, 1960, defendant moved to set aside "the default, and the entry of default, entered herein on November 3, 1959, and the judgment by default, entered herein on November 18, 1959" on the grounds of mistake, inadvertence, and excusable neglect on the part of defendant and its counsel. The motion was denied. Defendant appeals.

Affidavits and declarations were filed in support of and against the motion. There is little conflict in them.

On July 7, 1959, plaintiff's attorney wrote defendant demanding payment of the claimed indebtedness and advising that if it was not paid suit would be filed. Defendant did not answer the letter. There were declarations to the effect that defendant owed plaintiff the amount sued for.

A short time before the action was filed Mr. Donahue, defendant's advertising advisor, anticipating a claim by plaintiff, retained counsel in Santa Monica to handle whatever action arose, and left with him a "voluminous file" on the matter which he assumed contained everything the attorney might need to answer a complaint. About a week after September 29, 1959, the president of defendant delegated to Mr. Donahue the task of consulting the attorney whom Mr. Donahue had retained "to begin the defense to the suit," and he presumed all necessary steps were taken to do so. Some time after the summons and complaint were served, Mr. Donahue contacted the president of plaintiff "to protest its merits and was assured by him that 'it would be settled someway.' "

About October 25, 1959, he learned from the attorney that the complaint had been forwarded to him by the vice-president of defendant some 18 days previously. The attorney told him he "had only a 'couple of more weeks' to get to his office to prepare an answer to the complaint." Their "schedules would not coincide to permit an appointment until on or about November 3, 1959, at which time in [his] presence counsel telephoned the attorneys for plaintiff to discuss the case for the first time, only to be advised by them that a default had already been taken."

About "the middle of November, 1959" the president of defendant was informed a default had been taken. Shortly thereafter he contacted another attorney. The attorney who appeared for defendant on the motion filed a declaration of merits and stated he was contacted by defendant shortly after the judgment was entered on November 18, 1959; since that time he had been continually negotiating with plaintiff's attorneys in an effort to compromise the matter; his last contact was on April 22, 1960; on that date it became apparent the parties could not come to any agreement.

About October 29, 1959, plaintiff's attorney informed plaintiff's president that he had heard nothing from anyone concerning the complaint and explained plaintiff's right to request an entry of default. Plaintiff's president told him to file a request for entry of default immediately. On October 30, 1959, he filed the original summons with affidavit of service and a request for entry of default. Shortly thereafter he filed a proposed form of judgment. Some time in the first three weeks of November 1959 he received a telephone call from a "person who identified himself as an attorney with offices in Santa Monica." The caller stated he was attorney for defendant and that he had just received a copy of the complaint. He told the caller he had already filed a request for entry of default; that "someone had been very negligent, because the complaint had been served on the defendant's vice president more than a month previously"; he "doubted that plaintiff would consent to any stipulation to set aside such default." The caller replied that "he did not know the complaint had been served so long ago, and that he would confer with his client about the matter." He never heard again from that attorney. Some time later he received a call from the attorney who appeared for defendant on the motion and "had a number

of unsuccessful conversations and letters on the subject of settlement of [his] client's judgment.''

No affidavit or declaration was filed by the unidentified attorney in Santa Monica to whom the ''voluminous file'' and the complaint were delivered.

An application for relief from a judgment taken against a party through mistake, inadvertence, or excusable neglect is addressed to the discretion of the trial court, and its action will be sustained unless the discretion is palpably and manifestly abused. (4 Cal.Jur.2d, § 601, p. 481.)

There is no showing of an abuse of discretion in the denial of the motion. Defendant's president, vice-president, advertising advisor, and attorney were each well aware of the pendency of the action and of the necessity of answering the complaint. The advertising advisor had even anticipated the action and had delivered a ''voluminous file'' to an attorney before the action was filed. Except for retaining an attorney, defendant evinced almost a complete indifference to the litigation. Neither its president nor its vice-president showed any diligence. Defendant's advertising advisor could not seem to coincide his schedule with that of the unidentified attorney and did not arrange to discuss the case with him until after the default had been entered. There is no showing of mistake, inadvertence, or excusable neglect. (*Baratti* v. *Baratti*, 109 Cal.App.2d 917 [242 P.2d 22].) · Furthermore, to obtain relief, a defendant must have acted within a reasonable time. (*Hewins* v. *Walbeck*, 60 Cal.App.2d 603, 611 [141 P.2d 241].) Defendant learned of the entry of the default at least as early as November 3, 1959. Judgment had not yet been entered. Defendant took no step to vacate the default or the judgment until April 26, 1960, nearly six months after it learned the default had been entered.

Defendant asserts the clerk had no power to enter the judgment. ''In an action arising upon contract for the recovery of money or damages only,'' if the defendant has been served and he has not appeared within the time specified in the summons, the clerk, on application of the plaintiff and proof of service of summons, ''must enter the default of the defendant or defendants, so served, and immediately thereafter enter judgment for the principal amount demanded in the complaint.'' (Code Civ. Proc., § 585, subd. 1.)

Defendant quotes this from Witkin: ''The contract as pleaded must call for a *fixed and definite sum*, either ascer-

tainable from the contract, or *determinable by calculation* from its terms. If there is any uncertainty as to the amount the clerk, a ministerial officer, cannot resolve it, and the court must act. In brief, the clerk may only *compute*; he cannot *adjudicate*." (2 Witkin, California Procedure, § 60, p. 1695.)

The complaint is in four counts. One count alleges that about March 31, 1959, an account was stated in writing between plaintiff and defendant on which stated account $10,760.06 was agreed on as the balance due plaintiff from defendant, and that no part thereof had been paid. Another count alleged that $10,760.06 was due, owing, and unpaid from defendant to plaintiff on account of advertising services and costs incurred.

The theory of an account stated is that it becomes a contract between the parties for payment of the amount computed to be due without proof of the specific items included therein. An account stated is an executory contract. (*Hansen* v. *Fresno Jersey Farm Dairy Co.*, 220 Cal. 402, 407-408 [31 P.2d 359]; *Twohey* v. *Realty Syndicate Co.*, 4 Cal. 2d 379, 383 [49 P.2d 819].)

Referring to section 585 of the Code of Civil Procedure, the court in *Lynch* v. *Bencini*, 17 Cal.2d 521, stated (p. 526 [110 P.2d 662]): "In the nature of things this provision of the code must be construed to apply to contracts which provide for some definite fixed amount of damages ascertainable from the contract sued on, or from the terms of which a certain computation or calculation may be made by the clerk....

"Subdivision 1 of section 585 seems to refer more to actions based upon contract than to those based upon a breach of contract, although it would include an action for breach of contract in which the amount of the damages had also been agreed upon."

*Hunt* v. *City of San Francisco*, 11 Cal. 250, was an action *in assumpsit* to recover a specified amount. The complaint contained the common counts. The court stated (p. 259): "'As we have often held, a default confesses all the issuable facts of the several causes of action counted upon. The default amounts, in this case, to a confession of indebtedness for the causes, and on the accounts, alleged in the complaint—one of which here is for money had and received, and another for goods, etc., furnished the defendant. . . .

"There can be no difficulty in regard to the effect of the

judgment; for as it is by operation of law that the judgment is rendered, the law itself determines the causes of action upon which it rests; and these are, in this instance, the good counts, or those which in law justify and authorize the finding.''

If the complaint states a cause of action for the recovery of general damages in a specified amount alleged to have resulted from the defendant's breach of contract and the default of the defendant has been entered, it is the duty of the clerk to enter judgment in accordance with the prayer of the complaint. (*Alexander* v. *McDow*, 108 Cal.25, 30-31 [41 P. 24]; *Moore* v. *Fredericks,* 24 Cal.App. 536, 539 [141 P. 1049]; *Jones* v. *Moers,* 91 Cal.App. 65, 69-70 [266 P. 821].)

The clerk acted within the scope of his authority in entering the judgment.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 4, 1961.